**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:19-cv-226-MOC-WCM**

| | | |
|---|---|---|
| **WILLIAM ORR,** | ) | |
| | ) | |
| **Plaintiff, pro se,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **U.S. EPA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on the following motions: a Motion to Dismiss,

filed by Defendants French Broad Electric Membership Corporation and Jeff Loven, (Doc. No.

37), a Motion to Dismiss filed by Defendants U.S. Department of Interior ("DOI"), U.S. EPA

("EPA"), U.S. Fish and Wildlife Service ("FWS"), and U.S. Forest Service ("USFS"), (Doc. No.

40); and pro Plaintiff William Orr's Motion for Reconsideration of the Court's Order denying

Plaintiff's Motion to Toll Proceedings, (Doc. No. 50).

## I.  BACKGROUND

### A.  The Parties and Background to this Litigation

Plaintiff William Orr lives in an isolated portion of Roan Mountain in North Carolina and

describes himself as a naturalist, hiker, scientist, inventor, and organic gardener.  (Doc. No. 36 at

54, 56-59).  Defendant FBEMC is a rural, electric membership cooperative based out of

Marshall, North Carolina, serving over 39,000 people in Madison, Buncombe, Yancey, and

Mitchell Counties in North Carolina, and Unicoi and Cocke Counties in Tennessee.  FBEMC

maintains over 4,500 miles of distribution line, with 3,300 miles being overhead, to ensure that

its members receive reliable electricity service.  (Doc. No. 1, Attachments 1-2).  The biggest

threat to FBEMC's service to its members are trees that grow under its power lines. (Id.). To maintain its rights-of-way, FBEMC has at times sprayed an herbicide compound of Rodeo and Polaris on the leaves of saplings. The herbicide compound is EPA-approved. FBEMC's service areas includes Roan Mountain. FBEMC used its herbicide spray to maintain the rights-of-way in the area in 2017 and 2019. FBEMC completed its spraying on Roan Mountain in 2019.

Plaintiff is not a member of FBEMC, nor does he live near any FBEMC rights-of-way. (Doc. No. 10). Plaintiff alleges, however, that the herbicide compound used by FBEMC, specifically glyphosate, an active ingredient in the compound, is irreparably harming the habitat and endangered species on Roan Mountain. (Doc. No. 36). Plaintiff contends that the harm has been caused by "secondary hydrous transport," which causes the herbicide to drift miles away from the initial spray site during times of atmospheric moisture. Plaintiff alleges that Roan Mountain's ecosystem's "wounds and hurt are felt emotionally and spiritually by [Plaintiff]." (Doc. No. 1-3[1],[2] at 3). Plaintiff believes this drift transported herbicide all over Roan Mountain, including "into" Plaintiff's home and affecting critical habitats and protected endangered species. See (Doc. No. 36 at 15).

Plaintiff further claims that, while living on Roan Mountain, he has developed an intimate relationship with the endangered species Bombus affinis, known as the Rusty Patched Bumble Bee. (Doc. No. 36, Attachment p. 20). Plaintiff's Amended Complaint alleges that, before the spraying in 2017, the Rusty Patched Bees frequently visited his home. He further

---

[1]  In his Amended Complaint, Plaintiff incorporates by reference the allegations in his "Original Complaint," as well as the attachments. See (Doc. No. 36 at 5).

[2]  "In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (emphasis added).

claims that the 2017 spraying caused the Roan Mountain area to be too toxic for the bees because thereafter he found two dead bees. (Doc. No. 1, p. 17-18; Doc. 36, p. 17, Attachment 1).

On or around April 30, 2018, Plaintiff alleges he submitted/served on Defendants a letter styled as both a supplement to his May 26, 2017, Notice of Intent to Sue Letter and as public comments to EPA regarding EPA's Human Health and Ecological Risk Assessment of Glyphosate. (Doc. No. 36 at 16-17; Doc. No. 1-4). These comments purportedly raise his concern that registered pesticides such as Glyphosate can affect protected species' habitat. (Doc. No. 36 at 16-17). Plaintiff supplemented this public comment on or around May 5, 2018, through a document titled "Supplemental Notice of Imminent ESA § 9 Take of Critical Habitat/Protected Species on Roan Mountain." (Doc. No. 1-5).

Plaintiff alleges that, on or around July 5, 2019, he sent another letter to all Defendants that appears to be additional comments regarding EPA's Proposed Interim Registration Review Decision of Glyphosate and a "Continuing § 9 Notice of Take and Intention to Sue [] Pursuant to ESA § 1540(g)." (Doc. No. 1-6 at 2; Doc. No. 36). The July 5, 2019, letter also purportedly serves as a supplement to Plaintiff's prior May 26, 2017, "take" letter and April 30, 2018, take/comment letter described above. (Doc. No. 1-6 at 2). Five days later, on July 10, 2019, FBEMC allegedly began re-spraying the Rodeo/Polaris herbicide mixture on portions of Roan Mountain, including the rights-of-way easements near Plaintiff's home. (Doc. No. 36 at 79, ¶ 78).

Plaintiff initiated this action on July 19, 2019, naming the following persons and entities as Defendants: (1) FBEMC; (2) Jeff Loven, FBEMC's general manager; (3) U.S. Department of Interior ("DOI"); (4) U.S. EPA ("EPA"); (5) U.S. Fish and Wildlife Service ("FWS"); and (6)

U.S. Forest Service ("USFS").[3]  On September 13, 2019, Defendants FBEMC and Loven filed a

motion to dismiss Plaintiff's Complaint.  (Doc. No. 16).  On September 30, 2019, DOI, EPA,

FWS, and USFS (hereinafter referred to as the "federal defendants") filed their own motion to

dismiss.  (Doc. No. 20).  On January 14, 2020, this Court granted Plaintiff's motion for leave to

file his Amended Complaint.  See (Doc. No. 35 at 7).  Although Plaintiff's allegations are not

clear, it appears that Plaintiff now raises the following claims against Defendants:

> • Defendant FBEMC and Jeff Loven are violating the federal Endangered Species Act
> ("ESA") by spraying herbicides on Roan Mountain.  (Doc. No. 36 at 13, 15, 23-25).
>
> • the federal defendants have violated the ESA by failing to enforce/apply the provisions
> of the ESA and its regulations against FBEMC.  (Doc. No. 36 at 10).
>
> • FWS has violated Section 9 of the ESA, 16 U.S.C. § 1538, by failing to properly
> monitor ESA protected species and critical habitat on Roan Mountain, resulting in a
> "take" of protected species by FBEMC.  (Id.).
>
> • EPA and FWS have violated Section 7 of the ESA, 16 U.S.C. § 1536(a)(2), by failing to
> consult with each other to ensure Rodeo and Polaris herbicides and other registered
> pesticides/herbicides are not used in a manner that would jeopardize threatened or
> endangered species or destroy or adversely modify critical habitats.  (Id.).
>
> • EPA has violated the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") by
> allowing for the continued registration and use of pesticides/herbicides containing
> Glyphosate and Imazapyr.  (Id. at 11-14).

Plaintiff's Amended Complaint seeks to (1) enjoin the application of herbicides containing

Glyphosate and Imazapyr on or near Roan Mountain to the extent these herbicides "take"

protected species in a manner violating ESA Section 9; (2) require EPA to issue a notice of intent

---

[3]  Before filing this action, on June 1, 2017, Plaintiff filed an ESA citizen suit against FBEMC,
seeking to enjoin FBEMC from its 2017 herbicide spraying of Roan Mountain on the basis that it
would constitute an illegal "taking" of protected species.  (Doc. No. 36 at 18).  That lawsuit was
dismissed on June 5, 2017, because Plaintiff failed to meet the statutory sixty-day notice rule
applicable to ESA citizen suits.  Orr v. EPA, No. 1:17-cv-00141-MR-DLH, 2017 WL 2434779
(W.D.N.C. June 5, 2017).  Plaintiff appealed the decision to the Fourth Circuit, but the appeal
was dismissed for failure to prosecute.  Orr v. EPA, No. 17-1705, 2017 WL 5997422 (4th Cir.
Aug. 7, 2017).

to cancel the registration of herbicides containing Glyphosate and Imazapyr; (3) require EPA to modify manufacturer product labels for registered pesticides/herbicides that cause a "take" of protected species at or near Roan Mountain; (4) require EPA to make a posting in EPA's Endangered Species Protection Program ("ESPP") Bulletin regarding herbicides that may cause a "take" under ESA Section 9; and (5) require the USFS and FWS to enforce ESA Section 9 against third-parties to prevent them from allowing the application of herbicides that cause a take of protected species on Roan Mountain and to conduct monitoring/testing on Roan Mountain as required by law.  (Id. at 2-4).

## B.  Relevant Environmental Laws and Regulations

### 1.  The Endangered Species Act

As noted, Plaintiff alleges that Defendants have violated the Endangered Species Act ("ESA"), which protects threatened or endangered species.  16 U.S.C. § 1533.  The Secretaries of Commerce and the Interior share responsibility for implementing the ESA.  The Secretary of the Interior, acting through the Fish and Wildlife Service ("FWS"), has responsibility over terrestrial and inland fish species.  See id. § 1532(15); 50 C.F.R. §§ 17.11, 402.01(b).  The Secretary of Commerce, acting through the National Marine Fisheries Service ("NMFS"), has responsibility over marine species (including anadromous salmonids), none of which are at issue in this case.

Section 7 of the ESA directs federal agencies to ensure, in consultation with FWS or NMFS (the "consulting agency"), that "any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of" any listed species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2).  The term "action" is defined as "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by

Federal agencies in the United States or upon the high seas." 50 C.F.R. § 402.02. Section 7 applies to "all actions in which [the Federal agency has] discretionary Federal involvement or control." Id. § 402.03. If the agency proposing the relevant action ("action agency") determines that the action "may affect" listed species or critical habitat, Section 7 requires the action agency to pursue consultation with either FWS or NMFS, depending on the species. Id. §§ 402.13-402.14. The purpose of consultation is to determine whether the proposed action is likely to "jeopardize the continued existence of" any listed species or destroy or adversely modify the critical habitat of such species. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14.

Unlike Section 7, which applies only to federal agency actions, Section 9 of the ESA makes it unlawful for any person to "take" endangered species or engage in other prohibited acts regarding species protected under the ESA. 16 U.S.C. § 1538(a)(1)(B). To "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct" that would affect an endangered species. Id. § 1532(19). A person— defined to include, among other things, a corporation or partnership, see id. § 1532(13)—may apply for a permit pursuant to ESA Section 10 to "take" a protected species without facing potential liability under Section 9 if the potential taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity. Id. § 1539(a)(1)(B), (2). This is known as an "Incidental Take Permit." If an individual knowingly commits one of the prohibited acts under Section 9 without an Incidental Take Permit, they "may be assessed a civil penalty" by FWS or face criminal prosecution. Id. § 1540(a)(1), (b).

Finally, the ESA authorizes private citizen suits based on ESA violations. The ESA citizen-suit provision allows any person to commence a civil suit, in relevant part, to "enjoin any person . . . alleged to be in violation of" the ESA or its regulations. Id. § 1540(g)(1)(A). A person can

commence a citizen suit under this provision only if they provide written notice of the violation at least sixty days before filing suit to the Secretary and any alleged violator of the ESA.  Id. § 1540(g)(2)(A).

### 2. The Federal Insecticide, Fungicide, and Rodenticide Act

Plaintiff also alleges that Defendants have violated the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136y, which governs the sale, distribution, and use of pesticide active ingredients and pesticide products.  FIFRA makes it unlawful, subject to certain exceptions, for any "person in any State [to] distribute or sell to any person any pesticide that is not registered" under the Act.  7 U.S.C. § 136a(a); see also id. § 136j(a)(1)(A).  EPA will only register a pesticide active ingredient or pesticide product if, inter alia, "it will not generally cause unreasonable adverse effects on the environment."  Id. § 136a(c)(5)(D).

FIFRA contains a provision requiring EPA to continuously review registered pesticides every fifteen years (a process known as registration review).  Id. § 136a(g); see also 40 C.F.R. pt. 155.  During registration review, EPA examines data to determine whether registered pesticides still meet FIFRA's requirements, including the requirements that the pesticide perform without "unreasonable adverse effects" on the environment.  If EPA determines that a pesticide or its labeling does not comply with the provisions of FIFRA or "when used in accordance with widespread and commonly recognized practice, [the pesticide] generally causes unreasonable adverse effects on the environment," EPA can pursue cancellation of the pesticide's registration. 7 U.S.C. § 136d(b).

Although Section 16 of FIFRA allows judicial review of EPA's final actions, it contains specific procedural channels for bringing such a claim.  Some claims must be brought in district court, while other claims must be presented to the circuit courts of appeals.  Id. § 136n.  For

example, if a party seeks review of "the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law," the suit must be filed in the district court within six years of the final agency action.  Id. § 136n(a); Hardin v. Jackson, 625 F.3d 739, 743 (D.C. Cir. 2010).  If, however, a party challenges "the validity of any order issued by the Administrator following a public hearing," then the petition for review must be filed "in the United States court of appeals for the circuit wherein [the petitioner] resides or has a place of business, within 60 days after the entry of such order. . . ."  7 U.S.C. § 136n(b). Review of agency actions taken after a "public hearing" is committed to the "exclusive jurisdiction" of the courts of appeals.  Id.

### 3. Registration of Glyphosate and Glyphosate-Containing Herbicides Under FIFRA

Plaintiff alleges that Defendants are violating various environmental laws by using Glyphosate.  Glyphosate is an active ingredient found in various pesticides and herbicides.  The first pesticide product containing Glyphosate was registered in 1974.  See https://www.epa.gov/ingredients-used-pesticide-products/glyphosate.[4]  Pursuant to the registration review mandate, 7 U.S.C. § 136a(g), EPA formally initiated registration review for Glyphosate in 2009.  See https://www.epa.gov/ingredients-used-pesticide-products/glyphosate.

---

[4] "A federal court may take judicial notice of factual information located in postings on governmental websites in the United States."  Johnson v. Clarke, No. 7:12CV00410, 2012 WL 4503195, at *2 n.1 (W.D. Va. Sept. 28, 2012) (citing In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites, including court records)); Williams v. Long, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating).  Federal Rule of Civil Procedure 12(d) allows a court to consider facts and documents subject to judicial notice without converting a motion to dismiss into one for summary judgment.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

8

As part of the registration review process, EPA published in December 2017 the draft Glyphosate human health and ecological risk assessments for public comment.  Id.

In April 2019, after reviewing the public comments on the risk assessments, EPA released its Glyphosate Proposed Interim Decision for public comment; the public comment period for the Glyphosate Proposed Interim Decision closed on September 3, 2019.  See https://www.epa.gov/ingredients-used-pesticide-products/proposed-interim-registration-review-decision-and-responses-0.  On January 22, 2020, EPA released its Interim Registration Review Decision on Glyphosate.  See https://www.epa.gov/ingredients-used-pesticide-products/interim-registration-review-decision-and-responses-public.  The interim registration review decision of Glyphosate is currently pending publication in the Federal Register.  Id.

As noted, Plaintiff alleges FBEMC is spraying a Glyphosate-containing herbicide[5] named "Rodeo" and an Imazapyr-containing herbicide named "Polaris" on its rights-of-way easements on or near Roan Mountain.  (Doc. No. 36 at 14-15).  "Rodeo" is an alternative brand name for a Glyphosate-containing herbicide (EPA Registration Number: 62719-324) that was first registered as an herbicide by the EPA under FIFRA on July 15, 1999.  See id. at 11.  Plaintiff further alleges that Polaris is an herbicide manufactured by Nufarm with an EPA Registration Number: 228-534.  (Id.).  The herbicide with the EPA Registration Number 228-534 was first registered by EPA on November 5, 2007.[6]

_____

[5]  While Plaintiff alleges there are other EPA-registered herbicides/pesticides containing Glyphosate, Plaintiff only specifically alleges that FBEMC applied a mixture of "Rodeo" and "Polaris" on rights-of-way easements in Roan Mountain.  (See, e.g., id. at 14).

[6]  Plaintiff further alleges that "Rodeo" and "Polaris" were specifically "approved for use on Roan Mountain."  (Doc. No. 36 at 11).  EPA does not generally approve herbicides/pesticides for use in a specific location such as Roan Mountain; rather EPA typically approves herbicides/pesticides for use in generalized locations (e.g. "rights-of-way", "bare ground", etc.), as is the case for these products.  See, e.g., https://iaspub.epa.gov/apex/pesticides/f?p=PPLS:8:15275348465946::NO::P8_PUID,P8_RINU

9

## II.     STANDARD OF REVIEW

Defendants have filed motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  First, under Rule 12(b)(1), the defendant may file a motion to dismiss based on a lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Where a defendant files such motion, the plaintiff bears the burden to prove that subject matter jurisdiction exists.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  Additionally, a motion to dismiss for lack of subject matter jurisdiction may be brought on the grounds that the complaint fails to allege sufficient facts to invoke the court's jurisdiction and, when made on those grounds, all the facts asserted in the complaint are presumed to be true.  Id.

Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Christopher v. Harbury, 536 U.S. 403, 406 (2002).  A complaint fails to state a claim if it either asserts a legal theory that is not cognizable as a matter of law or fails to allege sufficient facts to support a cognizable legal claim.  Neitzke v. Williams, 490 U.S. 319, 325, 327-28 (1989). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

## III.     DISCUSSION

**A. The Federal Defendants' Motion to Dismiss Plaintiff's ESA Claims Based on Lack of Jurisdiction for Failure to Provide the Required Notice.**

In their motion to dismiss, the federal agency Defendants contend that the Amended

---

M:486916,228-534;
https://iaspub.epa.gov/apex/pesticides/f?p=PPLS:8:::NO::P8_PUID,P8_RINUM:37811,62719-324.  Both "Rodeo" and "Polaris" are approved for use on "rights-of-way" (foliar treatment). See id.

Complaint suffers from many of the same flaws as his original Complaint, in that Plaintiff has not satisfied the Endangered Species Act's ("ESA") jurisdictional provision requiring written notice of alleged ESA violations at least 60 days before the filing of an ESA citizen-suit. Additionally, Plaintiff continues to ask the Court to compel federal agencies to "enforce" the ESA against a private third party, a claim that fails as a matter of law because enforcement actions are inherently discretionary. For the following reasons, the Court agrees that dismissal is appropriate.

Any individual citizen can commence an action on their own behalf to enjoin anyone who is alleged to be in violation of any provision of the ESA.[7] 16 U.S.C. § 1540(g)(1)(A). However, notice must be given to the Secretary and to any alleged violator of the provisions violated at least 60 days before the action is commenced.[8] 16 U.S.C. § 1540(g)(2)(A). The sixty-day notice requirement is jurisdictional, and failure to strictly comply with the notice requirement acts as an absolute bar to suit under ESA. Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998). Indeed, when a plaintiff fails to comply with the notice requirement, a district court "ha[s] no choice but to dismiss the complaint . . . for lack of subject matter jurisdiction." Id. at 522. See also Friends of Animals v. Ashe, 808 F.3d 900, 903 (D.C. Cir. 2015); see also Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency, 126 F.3d 461, 471 (3d Cir. 1997).

_____

[7] While Plaintiff also cites 16 U.S.C. §§ 1531 et seq [ESA] and ESA § 3(5), 16 U.S.C. § 1532, as bases for this Court's jurisdiction, see Doc. No. 36 at 6-7, only 16 U.S.C. § 1540(g)(2)(A) specifically authorizes a person to enjoin "the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of [the ESA]."

[8] The purpose of the sixty-day notice rule is to ensure that government agencies can take responsibility for enforcing environmental actions and give alleged violators an opportunity to bring themselves into compliance with the ESA. Klamath-Siskiyou Wildlands Ctr. v. MacWhorter, 797 F.3d 645 (9th Cir. 2015).

11

Here, Plaintiff's failure to provide proper notice warrants dismissal of his ESA claims against the federal Defendants. Plaintiff contends that he complied with the sixty-day notice requirement through three letters dated May 26, 2017, April 30, 2018, and July 5, 2019.[9] None of these notice letters comply with the sixty-day notice requirement. First, because 60 days did not elapse between Plaintiff's July 5, 2019, letter and the filing of his original complaint on July 19, 2019, that letter cannot satisfy the ESA's notice requirement.[10] Hallstrom, 493 U.S. at 31 (any case filed before the end of the sixty-day notice period must be dismissed as barred by the statute); see also Orr, 2017 WL 2434779 (dismissing Plaintiff's 2017 lawsuit because the notice letter was sent only six days before the lawsuit was filed).

Next, the other two letters do not provide notice of any specific ESA claim against any of the federal agencies named in this suit. They allege only that FBEMC, a private entity, was violating Section 9 of the ESA and request the opportunity to present information to EPA regarding pesticide registrations. See generally (Doc. Nos. 1-3 and 1-4). These letters do not provide any notice that Plaintiff intended to bring a suit alleging that EPA, FWS, USFS, or DOI is in violation of ESA Section 7, Section 9, or any other portion of the ESA in connection with FBEMC's use of herbicides on Roan Mountain. Id.; cf. Sw. Ctr. for Biodiversity, 143 F.3d at 522 (A sixty-day notice must "[a]t a minimum . . . provide sufficient information . . . so that the

---

[9] While Plaintiff claims he provided "oral notice" to FWS, 16 U.S.C. § 1540(g)(2)(A)(i) expressly requires "written notice" of violations to satisfy the ESA citizen-suit mandate.

[10] Indeed, Plaintiff has admitted that the July 5, 2019, letter was outside the sixty-day notice period. See (Doc. No. 28 at 12). Furthermore, that Plaintiff's Amended Complaint was filed more than 60 days after the July 5, 2019, notice letter was allegedly served does not cure the untimeliness of the July 5, 2019 letter. See Forest Guardians v. U.S. Bureau of Reclamation, 462 F. Supp. 2d 1177, 1184-85 (D.N.M. 2006) ("Prohibiting parties from sending a [sixty-day notice] after commencing an action and then filing a supplemental complaint advances Congress' goal of creating a sixty-day nonadversarial period during which the parties might reach a resolution without need for judicial intervention.").

[notified parties] could identify and attempt to abate the violation.") (citing Pub. Interest Research Grp. of N.J., Inc. v. Hercules, Inc., 50 F.3d 1239, 1249 (3d Cir. 1995)).

Plaintiff argues that these letters provided sufficient notice to the federal Defendants because the phrase "critical habitat" is a term of art "implicating USFWS and EPA consultation under ESA § 7," sufficient to provide notice of a Section 7 violation. (Doc. No. 28 at 15). The Court cannot agree. Critical habitat consists of the "specific areas" designated by FWS or NMFS as meeting the criteria in the ESA for a listed species. See 16 U.S.C. § 1532(5) (defining critical habitat). The ESA contains many provisions and requirements for federal agencies pertaining to critical habitat. See, e.g., id. §§ 1533(a)(3)(A), (b)(2), (b)(3)(D)(i), (b)(6)(A), (b)(8), (c). Section 7(a)(2) of the ESA requires an action agency to engage in consultation with the consulting agency to ensure that any agency action "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical habitat]." Id. § 1536(a)(2). While impacts to critical habitat can trigger the Section 7(a)(2) obligation, the existence of critical habitat is neither a necessary nor sufficient condition for consultation. Consultation can occur when an agency action affects a listed species but does not affect any critical habitat. Further, Section 7's requirements apply only to agency actions that destroy or adversely modify critical habitat, not private actions. Plaintiff does not identify any federal agency action requiring ESA Section 7 consultation—the notice letters only identify FBEMC actions that purportedly violate ESA.[11]

Next, Plaintiff's argument that his April 30, 2018, notice letter "incorporated by reference" the pleadings in his 2017 lawsuit also cannot cure the lack of notice in this case.

---

[11]  Additionally, saying that EPA should modify a pesticide registration because a private party allegedly is applying a pesticide in a manner that causes "take" does not identify any specific ESA violation on the part of the federal Defendants.

(Doc. No. 28 at 16). The notice letter merely stated that "litigation ensued" in 2017 and, in a footnote, refers to the dockets of the district court and Fourth Circuit proceedings. (Doc. No. 1-4 at 2). This did not provide the federal Defendants with notice that Plaintiff intended to bring a new lawsuit alleging that specific agency actions, which were not even mentioned in the letter, violated provisions of the ESA. Nor can a previous lawsuit—which was dismissed for not meeting the sixty-day notice requirement—serve as the "written notice" required in the ESA, 16 U.S.C. § 1540(g)(2)(A)(i). The entire point of the sixty-day notice requirement is to allow agencies clear notice of their alleged violations and a "litigation free window" during which they may resolve disputes without the need to involve the court. <u>Sw. Ctr. for Biological Diversity</u>, 143 F.3d at 521. A lawsuit cannot begin this "litigation free window." Because Plaintiff failed to provide adequate sixty-day notice, the Court lacks jurisdiction over any ESA claims raised against federal Defendants.

Next, even assuming Plaintiff adequately noticed a violation of the ESA as applied to federal Defendants, Plaintiff's claim that the federal Defendants are violating the ESA for failing to monitor, enforce, or otherwise apply the ESA against third-parties in violation of ESA's Section 9 is not cognizable as a matter of law and this Court does not have jurisdiction to hear such claim. <u>See</u> (Doc. No. 36 at 10; <u>see also id.</u> at 2-4, ¶¶ 2,3, and 6). Plaintiff states that he "has withdrawn his claim regarding enjoining DOI, USFS, FWS, and EPA 'to strictly enforce the provisions of the [ESA]' as applicable to Roan Mountain's ESA protected species and their habitats" in his Amended Complaint. (Doc. No. 28 at 21 (quoting Doc. No. 1 at 2-3, 49). In his Amended Complaint, however, Plaintiff continues to assert this claim, albeit with some modified language. <u>See</u> (Doc. No. 36 at 10 (asserting that the federal Defendants are "in violation of ESA by failing to enforce/apply the provisions of ESA and its regulations, allowing FBEMC to

14

employ EPA registered herbicides . . . [to] 'Take' threatened/endangered species"); id. (asserting that FWS has "fail[ed] to properly monitor protected species and their habitats").

The APA only permits a suit to "compel agency action unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. § 706(1), "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004).[12] The action must be a "ministerial or non-discretionary act" that is "legally required" by a "specific, unequivocal command." Id. at 63-64 (citations and internal quotations omitted). As the APA further provides, there can be no review of any agency action or inaction that is "committed to agency discretion by law[,]" 5 U.S.C. § 701(a)(2), for example, when a statute is "drawn in such broad terms that in a given case there is no law to apply." Citizens to Pres. Overton Park v. Volpe, 401 U.S. 402, 410 (1971) (citation and internal quotation marks omitted).

The Supreme Court made clear in Heckler v. Chaney that "an agency's decision not to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion." 470 U.S. 821, 831 (1985). Discretionary decisions, such as whether an agency will investigate or enforce the ESA's requirements against a third party, cannot be reviewed by the courts. See, e.g., Sierra Club v. Larson, 882 F.2d 128, 132 (4th Cir. 1989) (finding agency's decision not to enforce a statute unreviewable); Salmon Spawning & Recovery All. v. U.S. Customs & Border

---

[12] Plaintiff identifies the ESA, not the APA, as the basis for the Court's jurisdiction on these claims. However, the ESA does not permit suits against FWS in its role as administrator of the ESA, except when FWS allegedly failed to perform a nondiscretionary duty required by Section 4 of the ESA, which is not at issue in this case. See 16 U.S.C. § 1540(g)(1); Bennett v. Spear, 520 U.S. 154, 173-74 (1997). Even if the Court considered this an ESA claim, it would fail because the APA provides the standard of review for judicial review of agency action or inaction under the ESA. See Cabinet Mountains Wilderness v. Peterson, 685 F.2d 678, 685 (D.C. Cir. 1982) ("Since the ESA does not specify a standard of review, judicial review is governed by section 706 of the [APA].").

Prot., 550 F.3d 1121, 1128-29 (Fed. Cir. 2008) (holding that the Customs Service's failure to enforce a ban on the importation of threatened and endangered salmon from Canada into the United States was a discretionary exercise of enforcement powers under the ESA, and thus was not subject to judicial review under the APA); Kixmiller v. SEC, 492 F.2d 641, 645 (D.C. Cir. 1974) ("[A]n agency's decision to refrain from an investigation or an enforcement action is generally unreviewable . . . .").

Applying those principles here, this Court lacks subject-matter jurisdiction to review Plaintiff's claim that the federal Defendants must prosecute ESA Section 9 violations involving herbicide/pesticide applications on Roan Mountain. Such enforcement authority is necessarily discretionary and not subject to judicial review. Even assuming a third-party entity had actually violated the ESA "as applicable to Roan Mountain's ESA protected species and their habitats," Plaintiff has not identified any non-discretionary enforcement duty under the ESA that the federal Defendants have failed to meet. The federal government's enforcement of ESA provisions is cast in discretionary terms, as set forth in Section 11 of the ESA. See, e.g., 16 U.S.C. § 1540(e)(6) ("The Attorney General of the United States may seek to enjoin any person who is alleged to be in violation of any provision of [the ESA] or regulation issued under authority thereof") (emphasis added); see also id. §1540(a)(1) (stating that those who violate the ESA "may be assessed a civil penalty by the Secretary of not more than $500 for each such violation").[13]

Further, the very existence of the ESA citizen-suit provision, allowing "any person" to bring an enforcement action for ESA violations, demonstrates that Congress contemplated that

_____

[13] Similarly, Plaintiff identifies no provision or regulation of the ESA, and none exists, requiring a federal agency to monitor private entities' compliance with Section 9 of the ESA or to investigate suspected violations brought to their attention. See (Doc. No. 36 at 10).

the Secretaries of Interior and Commerce may not prosecute or enforce every violation of the ESA. See id. § 1540(g)(1); id. § 1540(g)(2)(A) (a citizen-suit can only be commenced if the Secretary has not already commenced a civil enforcement action or criminal prosecution regarding the alleged violation). This, too, reinforces the agencies' discretion when determining how and whether to use agency resources to enforce the ESA against private parties. See Bennett, 520 U.S. at 165 (the ESA citizen suit encourages more robust enforcement through "private attorneys general," giving the government "a right of first refusal" to prosecute a discretionary ESA claim).

Additionally, only the Secretaries of DOI, the Department of Commerce, or the Department of Homeland Security (through which the Coast Guard operates), and the Attorney General of the United States hold enforcement authority under the ESA. See 16 U.S.C. §§ 1540(a)(1), (e)(1), (e)(6), (g)(2)(a). To the extent Plaintiff raises a claim that other federal Defendants—including EPA and USFS—should be compelled to enforce the ESA, this claim is alternatively subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because those agencies lack authority to enforce the provisions of the ESA against private actors. Accordingly, Plaintiff's claim seeking to compel the federal Defendants to generally "enforce" the ESA, Doc. No. 36 at 10, is impermissible under the APA because enforcement actions are committed to agency discretion by law, it does not fall within an existing waiver of sovereign immunity, and therefore the Court lacks subject-matter jurisdiction over such claim.

**B.   Plaintiff's Request that the Court Order EPA to Cancel Herbicide and Pesticides Registrations under RIFRA**

**1.        FIFRA's Jurisdictional Provision Precludes this Court from Considering Plaintiff's Request to Compel EPA to Issue a Notice of Intention to Cancel the**

**Glyphosate or Imazapyr Registrations under FIFRA**

Defendants further contend, and the Court agrees, that the Court does not have jurisdiction to consider any claim challenging the FIFRA registrations of Glyphosate and Imazapyr (Rodeo and Polaris), as FIFRA's jurisdictional provision (7 U.S.C. § 136n)[14] is not satisfied here.  See (Doc. No. 36 at 3 (Plaintiff requesting that EPA "issue a notice of intention 'to cancel [Rodeo and Polaris] registration or to change its classification").  Section 16 of FIFRA "explicitly lists the only circumstances in which [a district court] has jurisdiction pursuant to FIFRA." Beyond Pesticides/Nat'l Coal. Against the Misuse of Pesticides v. Whitman, 294 F. Supp. 2d 1, 7 (D.D.C. 2003).  Further, "[t]he plain language of Section 16… confine[s] judicial review to final agency actions."  Id.

Here, Plaintiff has failed to identify any final federal action that may be subject to judicial review.  To the extent Plaintiff seeks to challenge the initial registration of the herbicide products Rodeo or Polaris, this Court does not have subject-matter jurisdiction to hear those challenges either, as FIFRA Section 16 provides that such challenges must either be brought in the United States court of appeals "within 60 days after such entry of order" (to the extent the order was issued following a public hearing), see 7 U.S.C. § 136n(b), or brought in a district court within six years after the initial pesticide registration dates (to the extent the registration order was issued without a public hearing), 7 U.S.C. § 136n(a); Hardin, 625 F.3d at 743.  These deadlines to challenge the initial FIFRA registrations have long since passed[15] and thus any challenge is time-barred.

---

[14]  Notably, Plaintiff does not cite or otherwise invoke FIFRA's Jurisdictional Provision (7 U.S.C. § 136n) as the basis for subject-matter jurisdiction.  See generally Doc. No. 36 at 6-7.

[15]  While both Rodeo and Polaris have undergone more recent label amendments, the initial registration of both herbicides occurred more than 12 years ago, as Rodeo was first registered in 1999 and Polaris, manufactured by Nufarm, was first registered in 2007.

In sum, because Plaintiff has failed to identify any final action subject to judicial review under FIFRA, this Court does not have jurisdiction to consider Plaintiff's request to suspend or otherwise modify FIFRA registration for these herbicides.

**2. Plaintiff Cannot Invoke the ESA's Citizen-Suit Provision as the Basis for this Court's Subject-Matter Jurisdiction to Consider a Request to Enjoin EPA to Pursue Cancellation of FIFRA Registrations**

To the extent Plaintiff's Amended Complaint alleges the ESA citizen-suit provision (16 U.S.C. § 1540(g)(1)(A)) gives this Court subject-matter jurisdiction to entertain a request to cancel FIFRA-registered herbicides/pesticides, such claim fails as a matter of law.[16] The ESA citizen-suit provision does not give this Court subject-matter jurisdiction to issue an order canceling or otherwise modifying a FIFRA registration unless the FIFRA jurisdictional provision is also satisfied. For example, in Center for Biological Diversity v. EPA, the plaintiff brought an ESA citizen suit, alleging that EPA violated its procedural duty to consult under ESA Section 7(a)(2) before finalizing the registration of CTP (a type of pesticide) and requesting that the registration of CTP be overturned, 106 F. Supp. 3d 95, 100 (D.D.C. 2015), aff'd sub nom. Ctr. for Biological Diversity v. EPA, 861 F.3d 174 (D.C. Cir. 2017). The plaintiff did not allege EPA was in violation of FIFRA. The court found that it did not have subject-matter jurisdiction to hear the suit, reasoning:

> On its face, Plaintiffs' Complaint gives rise to an "actual controversy as to the validity" of the FIFRA Registration Order and is therefore governed by that Act's jurisdictional grant. 7 U.S.C. § 136n(b); see also Humane Soc'y of U.S. v. E.P.A., 790 F.2d 106, 110 (D.C. Cir. 1986).

> Plaintiffs attempt to escape FIFRA's review procedure codified at 7 U.S.C. § 136n, arguing that "[t]his case presents a single claim: ... that EPA violated its procedural duty to consult under [ESA] Section 7(a)(2) before

---

[16] Plaintiff does not allege this Court has jurisdiction under FIFRA or the APA to hear his claim.

finalizing the Registration of CTP. [Plaintiffs have] brought no claims under FIFRA or any other statute." … Hence, in Plaintiffs' view, this Court has subject matter jurisdiction under the ESA's citizen-suit provision, 16 U.S.C. § 1540(g)(1)(A).

However, "[i]f ... a special statutory review procedure [exists], it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." Media Access Project v. FCC, 883 F.2d 1063, 1067 (D.C. Cir. 1989). For that reason, Plaintiffs "may not escape an exclusive avenue of judicial review through artful pleading." Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n, 799 F. Supp. 2d 44, 51 (D.D.C. 2011) (citing Am. Bird Conservancy v. FCC, 545 F.3d 1190, 1194 (9th Cir. 2008)) (internal quotation marks omitted); accord Ctr. for Biological Diversity v. EPA, 2013 WL 1729573, at *18 ("Although Plaintiffs only challenge the EPA's failure to consult under ESA § 7, Plaintiffs' 'core objections' are to the pesticide registrations themselves, which are governed under FIFRA's administrative framework." (internal citation omitted))…

Id. at 100–01. In other words, even if the claim that a registration is deficient is based solely on ESA violations, subject-matter jurisdiction should be governed by the more specific FIFRA jurisdictional provision, not the jurisdictional provision under ESA's citizen-suit provision. Id.; see also Dow AgroSciences LLC v. NMFS, 637 F.3d 259, 265 (4th Cir. 2011) (recognizing that FIFRA provides the exclusive judicial review provision for all challenges to a final EPA order under FIFRA, including "all issues inhering" in such a challenge) (citing City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336 (1958)).

**C. Plaintiff's Request for this Court to Order EPA to Modify Manufacturer Product Labels or Require EPA to Make a Posting to Its ESPP Bulletins of Pesticides**

Plaintiff also requests that the Court enjoin EPA to: (1) "modify manufacturers product labels of EPA registered pesticides/herbicides being applied/used on or near Roan Mountain, N.C. [that] illegally 'Take' protected species under ESA § 9" or (2) to "make an appropriate posting to EPA's ESPP Bulletins of offending EPA registered pesticides/herbicides, being applied/used in such a manner to constitute an illegal 'Take' of protected species under ESA § 9

20

on or near Roan Mountain, N.C." (Doc. No. 36 at 3-4). This request is not cognizable as a matter of law.

Plaintiff has failed to identify any statute or law that gives this Court jurisdiction to grant such relief, and no such statutes or laws exist. To the extent Plaintiff seeks to invoke the APA, again, the APA only permits a suit to "compel agency action unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. § 706(1), "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton, 542 U.S. at 64. Here, there is no language in FIFRA, the ESA, or any applicable regulations creating a non-discretionary duty for EPA to either make postings on EPA's ESPP Bulletins or to modify product labels on pesticides that may cause a taking of endangered species in a manner requested by Plaintiff. Under FIFRA, labels are modified at the request of the pesticide/herbicide's registrant; to the extent EPA believes label amendments are necessary and the registrant refuses to make those changes, EPA's recourse is to pursue cancellation of the registration. See 7 U.S.C. § 136a(c)(9); 40 C.F.R. § 156.10 (FIFRA labeling requirements silent regarding potential effect on endangered species); see also Ctr. for Envtl. Health v. McCarthy, 192 F. Supp. 3d 1036, 1041 (N.D. Cal. 2016) (holding labeling disclosures not required unless FIFRA imposes a non-discretionary duty to do so). Accordingly, these requests for relief are not cognizable as a matter of law and this Court has no jurisdiction to consider them.

### D. Plaintiff's Remaining Grounds for this Court's Jurisdiction

Plaintiff's remaining bases for this Court's jurisdiction over Plaintiff's Amended Complaint are all without merit. See (Doc. No. 36 at 6-7). First, Plaintiff's attempt to invoke Federal Rule of Civil Procedure 65 as an independent basis for this Court's jurisdiction over his claims is unavailing. Kenrose Mfg. Co. v. Fred Whitaker Co., 512 F.2d 890, 893 (4th Cir. 1972)

21

("By express provision the [Federal Rules of Civil Procedure] are not to be read as a source of jurisdiction.") . Similarly, Plaintiff's assertion that various local rules grants this Court jurisdiction to hear his claims is also without merit. See N. Nat. Gas Co. v. Zenith Drilling Corp., No. CV 04-1374-MLB, 2005 WL 8160766, at *4 (D. Kan. Dec. 16, 2005) ("If a federal district court could, through its own local rules, grant itself jurisdiction to hear cases, there would be no limit on federal judicial power. Such a result would be contrary to the entire notion that federal courts are courts of limited jurisdiction.").

Further, neither 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C § 1343 (Civil Rights jurisdiction), nor 28 U.S.C § 1367 (supplemental jurisdiction) provide an independent basis for this Court's jurisdiction. Rather, those jurisdictional statutes are operable only to the extent the plaintiff can assert a separate and independent cognizable federal claim against the defendant. See Lotz Realty Co. v. United States, 757 F. Supp. 692, 694 (E.D. Va. 1990) (holding that 28 U.S.C. § 1331 is not an independent basis for federal jurisdiction); Ellis v. Cassidy, 625 F.2d 227, 229 (9th Cir. 1980) (holding that neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1343 create an independent basis for federal jurisdiction, rather "only serves to confer jurisdiction where a federal cause of action is provided by one of the substantive sections of the Civil Rights Act"); 28 U.S.C § 1367 (noting that "supplemental jurisdiction" under 28 U.S.C § 1367 is only invoked if the district court already has original jurisdiction over some of the plaintiff's claims). Because the Amended Complaint does not raise claims over which this Court has subject-matter jurisdiction, neither 28 U.S.C. § 1331, § 1343, nor § 1367 provide an independent basis for this Court to have jurisdiction over Plaintiff's claims.

### E. Defendants' Motion to Dismiss Based on Lack of Standing

Defendants, specifically FBEMC and Loven, also move to dismiss based on Plaintiff's

lack of standing to bring this suit.  For the following reasons, the Court finds, alternatively, that Plaintiff lacks standing to bring this suit.

An injury in fact is defined as something more than an injury to a cognizable interest. Lujan v. Defenders of Wildlife, 504 U.S. 555, 563 (1992).  An injury in fact is "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical." Id.  For an injury to be "particularized," the injury must affect the plaintiff in a personal and individual way. Id.  An injury in fact must be concrete, real and not abstract. Id.  It requires that the party seeking review be himself among the injured. Id.

The United States Supreme Court has specifically held that the desire to observe an animal species is merely a cognizable interest, as opposed to a legally protected interest.  In Lujan v. Defenders of Wildlife, an organization dedicated to wildlife conservation sought an injunction to require the Secretary to reinstate a certain interpretation of the ESA. Id.  Members of the organization claimed as their "injury" that they had observed endangered species in the past and hoped to do so again.  The Court held that "'some day' intentions–without any description of concrete plans, or indeed even any specification of when the "some day" will be– do not support a finding of the 'actual or imminent' injury that our cases require." Id. at 564. The Lujan Court further reasoned that a plaintiff claiming damage from environmental damage must use the area affected by the challenged activity and not an area roughly "in the vicinity" of it. Id.

Here, Plaintiff has failed to allege any concrete, particularized, actual, or imminent injury in fact.  Plaintiff alleges that he had "bec[ome] friends and developed an intimate relationship" with the Bombus affinis, which used to frequently visit his residence on Roan Mountain, and that he can no longer study and observe them.  (Doc. No. 1, p. 17; Doc. No. 36, Attachment 1 p. 4).

23

Beyond abstract declarations that he can no longer study and observe the Bombus affinis, Plaintiff has failed to allege any specific harm caused to the bees by Defendants' spraying, and he has failed to allege any causal connection between harm to the bees and any concrete, defined harm to himself. The harm Plaintiff has alleged is much more akin to the "special interest" of the Lujan plaintiffs in hoping to see an endangered species again, than to the personal, individual, concrete injury that the Supreme Court requires for plaintiffs to have standing. Moreover, as Plaintiff has failed to set forth any concrete plan on his part to engage with the bees again, he has not alleged sufficient injury to survive dismissal.

Moreover, in addition to alleging an injury in fact, to establish a causal connection between an injury and the conduct complained of, a plaintiff must show that the injury is fairly traceable to the challenged action of a defendant and not the result of the independent action of some third party not before the court. 504 U.S. at 563. Plaintiff's Amended Complaint fails to establish any causal connection between an alleged injury to him and Defendants' use of herbicide. Plaintiff claims that he found two dead Bombus affinis after FBEMC sprayed its right-of-way on Roan Mountain in 2017. He specifically claims that FBEMC sprayed its rights-of-way on or about the 6 or 7 of June 2019, and that he found the two dead bees sometime between 15 June and 15 July of that same year. (Doc. No. 36, Attachment 1 p. 7, 20). Plaintiff is unable to even specify the particular date on which he found the deceased bees, nor has he alleged where the dead bees were found in proximity to the spraying activity. He has merely cited the fact that these two events occurred within the same four to five weeks as the single causal connection between those events.

Although Plaintiff attempts to describe other causal connections between the two dead affinis and FBEMC's 2017 spraying, Plaintiff only alleges other alleged similar, negative effects

24

the spraying had on other species and Plaintiff himself. (Doc. No. 36, Attachment 1, p. 21). Further, Plaintiff presents no facts which support that the bees died because of FBEMC's spraying, as opposed to death from natural cause, climate changes, or third-party intervention. Thus, the lone allegation that Plaintiff found two dead bees in the same four- to five-week time period as FBEMC's spraying is clearly insufficient to fairly trace any purported injury to Plaintiff to Defendants' conduct.

Finally, as to the individually named Defendant Jeff Loven, here, Plaintiff has failed to provide any notice to Loven, individually, of any violation of the ESA, as is required as a prerequisite to a citizen suit of this nature. The notices provided by Plaintiff are all directed to "Jeff Loven, General Manager, French Broad Electric Membership Corporation" at the corporate office address. (Doc. No. 1, Attachments 3, 4, 5, 6). Those notices only detail purported ESA violations by Defendant FBEMC. (Id.). Plaintiff sets forth Loven's job title and duties and alleges that he knew or should have known various impacts of FBEMC's spraying, but Plaintiff does not allege any specific act by Loven individually constituting a violation of the ESA. As such, Plaintiff has failed to provide the requisite sixty-day notice to Loven as is required under the ESA, which acts as an absolute bar to suit, such that all claims against him must be dismissed.

**IT IS THEREFORE ORDERED** that:

(1) Defendants' Motions to Dismiss, (Doc. Nos. 37, 40), are **GRANTED**.

(2) Plaintiff's Motion to Toll Proceedings, (Doc. No. 50), is **DENIED**.

(3) This action is dismissed with prejudice.

Signed: May 15, 2020

Max O. Cogburn Jr.
United States District Judge