UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-00226-MOC-WCM

| | |
|---|---|
| WILLIAM ORR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| U.S. ENVIRONMENTAL ) | |
| PROTECTION AGENCY, ) | ORDER |
| U.S. DEPARTMENT OF INTERIOR, ) | |
| FRENCH BROAD ELECTRIC ) | |
| MEMBERSHIP CORPORATION, ) | |
| U.S. FOREST SERVICE, ) | |
| JEFF LOVEN, and ) | |
| U.S. FISH AND WILDLIFE SERVICE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Plaintiff Mr. Orr's Motion to Stay Final Order Pending Appeal. (Doc. No. 60). The U.S. Environmental Protection Agency ("EPA"), the U.S. Department of Interior, the U.S. Forest Service, and the U.S. Fish and Wildlife Service ("FWS") (collectively "Federal Defendants") filed a response opposing the Motion to Stay. (Doc. No. 62). In addition, Defendants French Broad Electric Membership Corporation and its General Manager Jeff Loven (collectively "FBEMC") filed a response opposing the Motion to Stay. (Doc. No. 63).

## I. BACKGROUND

On June 1, 2017, Plaintiff filed an Endangered Species Act ("ESA") citizen suit and moved for a temporary restraining order ("TRO") against French Broad Electric Membership Cooperative and its General Manager and several federal agencies. Orr v. U.S. EPA, No. 1:17-cv-00141-MR-DLH, 2017 WL 2434779, at *1 (W.D.N.C. June 5, 2017) ("Orr I"). The Court denied Plaintiff's motion for a TRO and *sua sponte* dismissed the case on June 5, 2017, because Plaintiff failed to

1

meet the statutory 60-day notice requirement applicable to ESA citizen suits and his claim against FBEMC under 42 U.S.C. § 1983 was frivolous. Orr I, 2017 WL 2434779, at *2. Plaintiff appealed the decision to the Fourth Circuit, but the appeal was ultimately dismissed for failure to prosecute. Orr v. U.S. EPA, No. 17-1705, 2017 WL 5997422 (4th Cir. Aug. 7, 2017).

On July 19, 2019, Plaintiff filed his complaint in this case ("Orr II"), seeking to stop FBEMC's spraying of herbicides on its right-of-way easements on Roan Mountain by bringing claims against FBEMC and several federal agencies. (See Doc. No. 1, ("Compl.")). On December 5, 2019, in response to motions to dismiss filed by Federal Defendants and FBEMC, Mr. Orr moved to amend his complaint. (See Doc. No. 29).

With leave of court, Mr. Orr filed his amended complaint in the Orr II case on January 14, 2020. (Doc. No. 36 ("Am. Compl.")). Plaintiff's amended complaint alleged that FBEMC's planned spraying of Rodeo and Polaris herbicides on its right-of-way easements on or near Roan Mountain violated ESA Section 9 and that the federal agencies also violated the ESA "by failing to enforce/apply the provisions of ESA and its regulations, allowing FBEMC to employ EPA registered herbicides in such a manner to adversely modify protected species habitats and illegally 'Take' threatened/endangered species in violation of ESA § 9." (See Am. Compl. at 1, 10). Plaintiff also alleged that EPA and FWS had "violated their legal duties under the ESA . . . by failing to properly consult with each other to insure Rodeo, Polaris herbicides and other registered pesticides/herbicides are not used in a manner to harm/jeopardize any listed species." (Id. at 10) (citing ESA Section 7(a)(2), 16 U.S.C. § 1536(a)(2)). Plaintiff additionally raised Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") claims, challenging EPA's registration of various herbicides, including herbicides containing glyphosate. (Id. at 11).

On May 15, 2020, this Court granted Federal Defendants' and FBEMC's motions to dismiss Mr. Orr's amended complaint and dismissed the case with prejudice. (See Doc. No. 53, reported at

2

Orr v. U.S. EPA, No. 1:19-cv-00226-MOC-WCM, 2020 WL 2512985 (W.D.N.C. May 15, 2020). On the claims that FWS and EPA violated Section 7 or Section 9 of the ESA by allowing the use of herbicides that allegedly harmed listed species, the Court held that Plaintiff had not satisfied the ESA's 60-day notice requirement. Id. at *5-7. The Court further held that "Plaintiff's claim that the federal Defendants are violating the ESA for failing to monitor, enforce, or otherwise apply the ESA against third-parties in violation of ESA's Section 9 is not cognizable as a matter of law and this Court does not have jurisdiction to hear such claim." Id. at *7 (citation omitted). The Court next determined that it lacked "jurisdiction to consider any claim challenging the FIFRA registrations of Glyphosate and Imazapyr (Rodeo and Polaris), as FIFRA's jurisdictional provision (7 U.S.C. § 136n) is not satisfied here." Id. at *9 (footnote and citation omitted). In addition, many of Plaintiff's allegations involved actions that were past the six-year statute of limitations or were not final agency actions subject to judicial review. Id. The Court also made clear that "[t]o the extent Plaintiff's Amended Complaint alleges the ESA citizen-suit provision (16 U.S.C. § 1540(g)(1)(A)) gives this Court subject-matter jurisdiction to entertain a request to cancel FIFRA-registered herbicides/pesticides, such claim fails as a matter of law." Id. Finally, the Court held that Plaintiff lacked standing because he had not alleged an adequate concrete, particularized, actual, or imminent injury in fact or the required causal connection. Id. at *12.

On July 13, 2020, Plaintiff appealed the Court's order dismissing his claims to the Fourth Circuit. (Doc. No. 56). The case is currently pending before the Fourth Circuit. See Orr v. U.S. EPA, No. 21-1222 (4th Cir. filed Mar. 1, 2021). On June 7, 2021, Plaintiff filed his Motion to Stay in this case. (Doc. No. 60). The same day, he filed a new lawsuit in the Western District of North Carolina and a motion for a TRO. See Orr v. U.S. EPA, No. 1:21-cv-00149-MOC-WCM (W.D.N.C. filed June 7, 2021) ("Orr III").

Plaintiff's Motion to Stay is not a typical request for stay pending appeal, where the movant

3

is seeking to alter an injunction entered by the Court. Here, Plaintiff is not asking the Court to "suspend, modify, restore, or grant an injunction," Fed. R. Civ. P. 62(d); he is asking the Court to stay the preclusive effect of its decision so that he may pursue new claims in a new district court action, while also pursuing his Fourth Circuit appeal of the present case. Plaintiff has not met his burden of justifying this unusual request. The Court will therefore deny Plaintiff's Motion to Stay the Court's May 15, 2020 Order and Judgment pending resolution of his appeal to the Fourth Circuit.

## II. STANDARD OF REVIEW

The district court's authority to grant a stay pending appeal derives from Federal Rule of Civil Procedure 62(d), which provides:

> While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

The movant is not entitled to a stay as "a matter of right" and bears the burden of showing that the circumstances justify a stay pending appeal. Nken v. Holder, 556 U.S. 418, 433 (2009). The Court has broad discretion to determine if a stay is warranted, and that discretionary judgment is guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Id. at 434; see also Celgard, LLC v. LG Chem Am., No. 3:14-cv-00043-MOC-DCK, 2014 WL 12479436, at *1 (W.D.N.C. July 22, 2014). The standard is similar to the four-factor test utilized for preliminary injunctive relief, because both require the Court to consider whether to allow or disallow actions before the legality of the actions have been conclusively determined. Nken, 556 U.S. at 434.

4

### III. DISCUSSION

Plaintiff has not carried his burden of showing that the four factors that inform the Court's consideration of a stay have been met.

First, Plaintiff has not made a showing that he is likely to succeed on the merits of his appeal. This Court's May 15, 2020 Order was well-reasoned and identified at least one, but often several, independently fatal defects in each of Plaintiff's claims. The Court held that Plaintiff's ESA claims against the Federal Defendants and against Jeff Loven had not satisfied the 60-day notice requirement of the ESA citizen-suit provision, 16 U.S.C. § 1540(g)(2)(A)(i), and therefore were barred. Orr II, 2020 WL 2512985, at *5-7, *12. The Supreme Court has held that notice provisions like the one in the ESA are "mandatory" and "a district court may not disregard these requirements at its discretion." Hallstrom v. Tillamook Cnty., 493 U.S. 20, 31 (1989). Because Plaintiff's various notice letters did not identify any ESA claim that he planned to raise against Federal Defendants or Jeff Loven, the law requires dismissal of these claims. As such, the Fourth Circuit is likely to affirm this Court's determination.

The Court also provided well-supported alternative grounds for dismissing Plaintiff's ESA claims. First, the Court dismissed for lack of subject matter jurisdiction Plaintiff's allegation that Federal Defendants were liable for the "take" of threatened or endangered species pursuant to Section 9 of the ESA because they failed to "enforce" the ESA to prevent FBEMC's spraying of herbicides. Orr II, 2020 WL 2512985, at *7-8. The Court's ruling on this claim relied on the plain language of the ESA and well-established Supreme Court law providing that courts lack jurisdiction to require a federal agency to take a discretionary action. Id. (citing Norton v. S. Utah Wilderness All., 542 U.S. 55, 63-64 (2004) and Heckler v. Chaney, 470 U.S. 821, 831 (1985)). Indeed, Plaintiff conceded in his request to amend his complaint that this claim suffered from legal errors and should be withdrawn. (See Doc. No. 28 at 21). The Court similarly held that it lacked

5

jurisdiction to order EPA to take actions it was not legally required to take, such as modifying a pesticide label or posting a warning on the agency's ESPP Bulletins. Orr II, 2020 WL 2512985, at *10. Again, this determination was based on clearly established legal principles and statutory language.

The Court also identified alternative grounds for dismissing Plaintiff's claim asserting that Federal Defendants violated Section 7(a)(2) of the ESA by not engaging in consultation with FWS or the National Marine Fisheries Service over the registration of glyphosate and imazapyr or other unspecified actions relating to those registrations. The Court determined that this claim should have been brought under FIFRA, not the ESA citizen-suit provision, because the challenge fell within FIFRA's jurisdictional provision, 7 U.S.C. § 136n. See id. at *9-10. The Court also held that this claim failed to meet the jurisdictional requirements of FIFRA because it challenged actions that were beyond the statute of limitations or were not reviewable final agency actions. Id. at *9. Notably, even if this claim could have been raised under the ESA citizen-suit provision directly, the six-year statute of limitations and "final agency action" requirements would still apply and bar Plaintiff's claim. See 28 U.S.C. § 2401(a) (six-year statute of limitations for civil actions against United States); Gen. Land Office v. U.S. Dep't of the Interior, 947 F.3d 309, 318-19 (5th Cir. 2020) (applying the six-year statute of limitations from 28 U.S.C. § 2401(a) to an ESA claim); Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 659 (2007) (when deciding whether the agency was required to engage in ESA consultation pursuant to Section 7(a)(2), holding that "[t]he federal courts ordinarily are empowered to review only an agency's *final* action, see 5 U.S.C. § 704 . . . ."). The Court's ruling on the Section 7(a)(2) claim followed undisputed legal principles and would likely be affirmed by the Fourth Circuit.

Finally, the Court found that the entire lawsuit could be dismissed for lack of standing— including the claims against Federal Defendants discussed above and the Section 9 claim raised

6

against FBEMC. Orr II, 2020 WL 2512985, at *11-12. The Court found that Plaintiff had not alleged a sufficiently particularized, concrete injury from FBEMC's spraying and had not adequately alleged a causal connection between FBEMC's spraying and the alleged deaths of two Rusty Patched Bumble Bees. Id. The Court relied upon Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), in which the Supreme Court found that the plaintiffs lacked standing to raise an ESA claim when they asserted "'some day' intentions–without any description of concrete plans" to view the listed species. Id. at *11 (quoting Lujan, 504 U.S. at 564).

The Court's decision was well-supported and thorough, with alternative bases for dismissing most of the claims. Plaintiff has not made a "strong showing" that he is likely to succeed on his appeal by having any of the Court's rulings reversed. Nken, 556 U.S. at 434.

Second, Plaintiff does not meet his burden of showing that he is likely to be irreparably injured by the denial of his Motion to Stay. Even if this stay were granted, and Plaintiff's claims in Orr III were not barred by *res judicata*, FBEMC has already likely completed its spraying by the time of this failing. At the June 14, 2021, hearing held on Plaintiff's Motion for a TRO in Orr III, counsel for FBEMC represented that the spraying in the area near Roan Mountain was expected to be completed in a few days. Based on that representation, FBEMC has likely completed this spraying. Therefore, Plaintiff will likely suffer no irreparable harm during the pendency of his appeal.

Third, the requested stay would adversely impact other parties by depriving them of a well-established defense: preclusion. Staying the Court's May 15, 2020, Order—if it has the effect Plaintiff seems to think it will—would require Federal Defendants and FBEMC to defend claims in two simultaneous lawsuits. To be clear, Federal Defendants and FBEMC Defendants may have to litigate those two suits (Orr II on appeal and Orr III in district court) if the Court ultimately holds that Orr II does not preclude Orr III. However, issuing a stay in this case would deprive all

7

Defendants of being able to argue preclusion in Orr III. This would potentially lead to a waste of taxpayer-funded resources for the Department of Justice and the three federal agencies named as defendants in Plaintiff's suits. Plaintiff's Motion to Stay does not ask the Court to impose or alter any injunction, and so would not impose any other substantial hardship to the parties.

Finally, the public interest in this case is largely neutral. While the public interest generally weighs in favor of ESA-listed species, see Tenn. Valley Auth. v. Hill, 437 U.S. 153, 194 (1978), there has been little indication that granting Plaintiff's Motion to Stay will benefit listed species. As explained above, FBEMC has likely completed this round of spraying, and therefore allowing Plaintiff to bring a new lawsuit would not stop any adverse impacts from that spraying. Plaintiff's proposed Stay would therefore be unlikely to benefit ESA-listed species and would be likely to unnecessarily expend the courts' and the parties' resources.

## IV. CONCLUSION

Because the four factors that guide motions to stay taken together weigh against granting Plaintiff's Motion to Stay (Doc. No. 60), Plaintiff's Motion to Stay is **DENIED**.

Signed: July 22, 2021

Max O. Cogburn Jr
United States District Judge